# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEBORAH MCLEAN,** | : | **CIVIL ACTION NO. 15-671** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ABINGTON MEMORIAL HOSPITAL** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                  **September 15, 2015**

Discharged employees with diagnosed disabilities under the Americans with Disabilities Act ("ADA") must adduce facts meeting a *prima facie* case their employer terminated their employment for a discriminatory purpose or failed to accommodate specific requests related to the disability.  Upon showing a *prima facie* case for discrimination in firing, the former employee must then adduce facts evidencing her employer's stated business reasons for terminating her were a pretext to conceal a discriminatory animus against her due to her disability.  Here, while the Plaintiff employee with sleep apnea adduced evidence to establish a *prima facie* case of disability discrimination, she is unable to show the Defendant Hospital's reasons for terminating her due to patient safety reasons based on her admitted and continuing errors are pretext. Plaintiff employee is also unable to show she requested a transfer accommodation necessary to address her disability.  As such, in the accompanying Order, we grant the Defendant Hospital's motion for summary judgment dismissing Plaintiff's claim of disability discrimination in firing her after several reported patient safety concerns and for failing

to accommodate her request for a transfer admittedly made because she did not like her supervisor but not tied to her disability.

## I.   UNDISPUTED FACTS[1]

Defendant Abington Memorial Hospital ("Hospital") employed Plaintiff Deborah McLean ("McLean") as a medical technologist from January 10, 2000 until firing her on September 25, 2013. (A. at 2a, 81a-82a).  McLean suffers from sleep apnea, an agreed disability under the ADA.  McLean alleges the Hospital terminated her based on her disability and failed to accommodate her request for a transfer. (ECF Doc. No. 1).

The issues bringing the parties to this Court began in August 2012, approximately twelve years into McLean's employment and thirty-four (34) years as a medical technologist. (A. at 320a, ¶4).  On August 12, 2012, the Hospital verbally warned McLean for failing to "call critical values" in lab results on four (4) occasions within a three (3) week period. (A. at 52a-58a).  This incident marked McLean's first formal discipline and McLean and her supervisor discussed these errors were "out of character." (A. at 320a, ¶2). The Hospital admits its medical technology employees miss calling critical results about fifty (50) times a year, or about once a year per employee. (A. at 195a).  On October 2, 2012, the Hospital warned McLean in writing for not following proper operating procedures and safety and service behaviors for two (2) incidents occurring on September 18, 2012. (A. at 59a-60a).  In October 2012, after issuing the written warning, the Hospital retrained McLean on laboratory procedures. (A. at 60a, 206a).

---

[1] The Court's Policies require a Statement of Undisputed Material Facts ("SUMF") filed in support of a summary judgment motion. The Hospital filed its SUMF at ECF Doc. No. 18. McLean responded to the Hospital's SUMF and included additional facts she contends create a genuine issue of material fact at ECF Doc. No. 24-4. The party moving for summary judgment must also submit an appendix of exhibits or affidavits. The Hospital's appendix appears at ECF Doc. No. 19-2. The responding party may submit additional exhibits. McLean submitted additional materials to the appendix at ECF Doc. No. 24-4.  References to the appendix in this opinion shall be referred to as "A" followed by the Bates number, for example, "A. at 1a."

On November 13, 2012, the Hospital suspended McLean for one (1) day for not documenting critical calls properly and for placing "unspun" blood into the "spun" lane on a laboratory machine. (A. at 17a, 63a-69a).

On December 6, 2012, McLean's pulmonologist diagnosed her with severe sleep apnea. (A. at 37a-38a, 44a-45a, 265a, 295a). After diagnosis, McLean's doctor prescribed a continuous positive airway pressure machine ("CPAP"). (A. at 266a). Shortly thereafter, McLean told her laboratory manager, Kathleen Perlmutter, of her sleep apnea diagnosis. (A. at 28a, 29a, 213a). On January 7, 2013, McLean reported significant improvement in daytime sleepiness & fogginess to her doctor. (A. at 37a-38a, 296a-297a).

On January 30, 2013, McLean failed to follow proper procedures causing an incorrect lab result reported to a physician.  McLean swears this incident, unlike the pre-CPAP incidents, did not threaten patient safety. (A. at 320a-321a, ¶5).  McLean immediately called the physician and sent the appropriate results less than twenty (20) minutes later. (A. at 19a-21a). On February 4, 2013, the Hospital issued a final written warning to McLean for this incident. (A. at 19a, 70a-74a).

On February 8, 2013, McLean again reported improvements in daytime sleepiness and fogginess to her doctor. (A. at 39a, 298a). On February 13, 2013, McLean spoke to the Hospital's Human Resources director Christine Tierney about her diagnosis and the possibility of making her secondary Reiki practice a more regular job. (A. at 31a-32a, 322a).

On September 4, 2013, McLean again placed "unspun" specimens in the "spun" lane of the lab. (A. at 23a, 24a, 75a-80a). The Hospital then suspended McLean on September 9, 2013 for three (3) days for not following proper operating procedures. (A. at 24a, 75a-80a).  At some point during the three (3) day suspension, McLean asked Ms. Perlmutter about a transfer to the

hematology department. (A. at 318a, 319a).   McLean testified she wanted the transfer to hematology because of displeasure with her supervisors.   (*Id.*)  By this time, the Hospital had six separate "Employee Conferences" counselling McLean regarding unsatisfactory performance. (A. at 52a, 59a, 61a, 63a, 70a, 75a, 81a).

At a seventh "Employee Conference," the Hospital terminated McLean on September 25, 2013. (A. at 81a-82a).   On February 4, 2014, McLean filed a complaint with the EEOC, dual filed with the Pennsylvania Human Relations Commission ("PHRC"), alleging disability discrimination in violation of the ADA and Pennsylvania Human Relations Act ("PHRA"). (A. at 343a-348a).  McLean filed this action on February 11, 2015 (ECF Doc. No. 1). [2]

## II.    ANALYSIS

McLean seeks relief for disability discrimination against the Hospital for terminating her and for failing to accommodate her September 2013 request for transfer to hematology before termination.  After discovery, the Hospital moves for summary judgment on both claims.[3]  The

---

[2]   We analyze the ADA and PHRA claims under the same legal standards. *See Rineheimer v. Cemcolift, Inc.,* 292 F.3d 375, 382 (3d. Cir. 2002) ("The PHRA is basically the same as the ADA in relevant respects and 'Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts.'") (quoting *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (citations omitted)).

[3]   Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In other words, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citation and internal quotation marks omitted). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on

Hospital argues McLean fails to establish a *prima facie* case of discrimination and, even assuming she establishes a *prima facie* case, she has no evidence the Hospital's legitimate non-discriminatory basis for terminating her is pretext for unlawful discrimination.  The Hospital also moves for summary judgment on the failure to accommodate claim, arguing McLean never requested an accommodation for her disability.

### A.  McLean fails to show disputed evidence of disability discrimination.

We analyze ADA claims premised on circumstantial evidence under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).[4] *Showers v. Endoscopy Center of Central Pennsylvania, LLC*, 58 F.Supp. 446, 460 (E.D.Pa. 2014).  McLean must first establish a *prima facie* case of discrimination. *Fuentes v. Perksie*, 32 F.3d 759, 763 (3d Cir. 1994). Upon establishing a *prima facie* case, the burden of production shifts to the Hospital to articulate a legitimate and non-discriminatory reason for the termination. *Id.* If the Hospital successfully articulates such a reason under a "relatively light burden," then the burden shifts back to the McLean to adduce evidence showing by a preponderance of the evidence the Hospital's reason to terminate her is pretextual. *Id.; Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010); *Kurten v. Hanger Prosthetic and Orthotics, Inc.,* 402 F. Supp.2d 572, 579-80 (W.D.Pa. 2005) (citations omitted).

### 1.  McLean adduces sufficient evidence for a *prima facie* case.

To meet a *prima facie* case of disability discrimination, McLean must show "(1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by her employer, and

---

which it bears the burden of proof at trial." *Blunt v. Lower Merion Sch. Dist*., 767 F.3d 247, 265 (3d Cir. 2014).

[4]  McLean does not cite or argue direct evidence of discrimination.

(3) she has suffered an otherwise adverse employment decision as a result of discrimination." *Sulima,* 602 F.3d at 579.  McLean's "burden of establishing a *prima facie* case of disparate treatment is not onerous." *Texas Department of Community Affairs,* 458 U.S. 248, 253 (1981). The parties agree McLean is disabled but dispute whether she: is otherwise qualified with a reasonable accommodation; and, suffered an adverse employment decision as a result of discrimination.

### *McLean is otherwise qualified to perform with a reasonable accommodation.*

For almost thirty-four (34) years, McLean worked as a medical technologist without formal discipline.  Her supervisor concedes her errors in fall 2012 were "out of character." McLean admits her fall 2012 errors, while occurring once a year on average, threatened patient safety.  Had the Hospital terminated her based on these errors and without knowing of the sleep apnea diagnosis, McLean may have a tougher argument.

McLean bears the burden of showing she is "an otherwise qualified individual." *Shiring v. Runyon*, 90 F.3d 827, 832 (3d Cir. 1996) (citing *Buckingham v. United States*, 998 F.2d 735, 739-740 (9th Cir. 1993)). We apply a two-part test to determine if McLean is qualified: 1) on credentials, does she possess appropriate educational background, experience, skills and licenses and 2) on this job, can she perform the essential functions of this position with or without reasonable accommodation.  29 C.F.R. pt. 1630. We apply this test at the time when the Hospital terminated McLean.  *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998).

Here, the Hospital does not assert McLean did not have the credentials for her thirty-four year career as a medical technologist. There are genuine issues of material fact as to whether McLean, after using the CPAP machine, continued to be qualified as a medical technologist without risk to patient safety in September 2013.  It appears there is one instance of documented

job performance problems involving patient safety concerns after the December 6, 2012 diagnosis. McLean swears the January 30, 2013 incident did not involve patient safety but concedes the September 2013 incident may involve patient safety.  The Hospital's sole argument is her errors, before the diagnosis and CPAP, create patient safety issues.  At a minimum, there are factual issues. We cannot find, as a matter of law, McLean without an accommodation, could not perform the essential functions of the medical technologist position, particularly when the department averages fifty (50) critical call errors a year.

### *Termination resulting from discrimination*

McLean adduces facts leading to genuine issues whether her termination is based on her sleep apnea disability. In its Reply Brief, the Hospital repeatedly cites a concern for patient safety arising from the incidents before the diagnosis. The Hospital admits each medical technologist errs in a critical call protocol at least once a year. At this stage, there is no comparator evidence of the discipline imposed for an annual error, as opposed to several errors made by McLean in a short time in the fall 2012. The Hospital also cites the January 30, 2013 incident and September 2013 incidents as a basis for termination, particularly after six earlier counselling sessions.  At this stage, McLean has created minimum genuine issues of material fact concerning whether her termination is a result of discrimination.  *See Showers*, 58 F.Supp.3d at 465 (while skeptical of the fact issues, proceeding to analyze under *McDonnell Douglas*).

### 2.  The Hospital's legitimate non-discriminatory reason for termination.

Under the *McDonnell Douglas* framework, once McLean establishes a *prima facie* case, the burden shifts to the Hospital to show a legitimate business purpose for the termination. The Hospital meets its burden. The Hospital's decision to terminate McLean is related to her

numerous, well-documented errors in performance of her work and McLean admits the errors. (ECF Doc. No. 24-4).

The Hospital argues McLean's errors posed a direct threat to patient safety. "Direct threat" means "a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation." 29 C.F.R. §1630.2(r).  McLean debates whether her errors are severe enough to be a significant risk and claims the errors are the same as any employee would commit "albeit at a slightly higher frequency." (ECF Doc. No. 24 at 9).  However, "[t]he fact that this particular incident did not result in harm to the patient does not establish that [plaintiff] did not pose a direct threat to [plaintiff's] patients. Rather, the question is whether an occurrence of such an episode could result in harm to a patient."  *Haas v. Wyoming Valley Health Care Sys.*, 553 F. Supp. 2d 390, 401 (M.D. Pa. 2008).

McLean admits her mistakes.  She raises no genuine issue of material fact as to whether her errors could not result in harm to a patient. As such, she fails to contest the Hospital's concern for patient safety.

### 3.  McLean fails to adduce evidence of pretext in the Hospital's legitimate non-discriminatory reason for termination.

McLean fails to offer evidence the Hospital's proffered legitimate non-discriminatory reason for her termination is a pretext for discriminatory animus.

To show pretext, McLean must "point to some evidence, direct or circumstantial,  from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.  "To make this showing, plaintiff may introduce evidence to show '(1) that the proffered reasons had no

basis in fact[;] (2) that the proffered reasons did not actually motivate [the act;] or (3) that they were insufficient to motivate discharge." *Anderson v. Lehigh Valley Hosp.*, No. 13-1986, 2015 WL 1455210, *12 (E.D. Pa. Mar. 30, 2015) (citing *Petrikonis v. Wilkes-Barre Hosp. Co.*, No. 11-280, 2013 WL 5877000 at *7 (M.D. Pa. Oct. 30, 2013)). "The plaintiff must show 'not merely that the employer's proffered reason[s] [were] wrong, but that [they were] so plainly wrong that [they] cannot have been the employer's real reason[s]." *Id. (citing Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1109 (3d Cir. 1997)). If McLean points to evidence sufficient to discredit the Hospital's proffered reasons, she need not also adduce additional evidence of discrimination beyond the quantum necessary for her to establish a *prima facie* case. *Fuentes*, 32 F.3d at 764. To meet her burden, McLean must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the Hospital's proffered legitimate reasons to lead this Court to believe a jury *could* rationally find them "unworthy of credence." *Id.* at 765 (emphasis in original) (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)).

McLean presents no fact allowing us to believe a jury could rationally find the Hospital's patient safety concerns in September 2013 are pretext. McLean admits her CPAP treatment to address sleep apnea is not "foolproof." (ECF Doc. No. 24-1 at 11). McLean admits she did not use the CPAP treatment every night and she experienced daytime drowsiness. (*Id.*) She cites no evidence of disparate treatment of employees with as many multiple errors. She does not answer the Hospital's allegedly unprecedented steps of six (6) counselling sessions addressing her errors before the final termination in September 2013.

Instead, McLean argues we should not examine the Hospital's conduct alone but must view her poor job performance through the lens of the disability potentially causing poor

performance, relying on *Kurten.* (ECF Doc. No. 24 at 11).  While McLean is correct the court in *Kurten* denied the defendant's motion for summary judgment because it could not "analytically consider the Defendant's proffered legitimate reason for terminating the Plaintiff apart from the Plaintiff's alleged cognitive disability which may have caused the Plaintiff's poor performance," the court expressly rested its decision upon the specific facts of record.  *Kurten*, 402 F. Supp. 2d at 588*.* The facts in *Kurten* differ substantially from the facts here; Kurten received accommodations at work that were subsequently not maintained leading to the performance errors which ultimately caused his discharge. *Id.* at 577. Here, the Hospital provided no such accommodations prior to discharge.  The record confirms McLean's doctor prescribed the CPAP without the Hospital's knowledge or approval.

McLean also cites *Panto v. Palmer Dialysis Ctr./Total Renal Care* urging us to view her poor job performance through the lens of the disability potentially causing the poor performance. *Panto v. Palmer,* No. 01-6013, 2003 WL 1818990, *3 (E.D. Pa.  Apr. 7, 2003).  In *Panto,* the employer terminated plaintiff for excessive absenteeism. *Panto* did not address work related errors caused by a disability, but rather for absences caused by a lupus diagnosis. *Id.* at *1, *3. The court in *Panto* specifically references cases involving excessive absenteeism when requiring the plaintiff's poor job performance to be viewed through the lens of the disability. *Id.* at *4. To view *Panto* outside the context of excessive absenteeism reaches beyond the scope of the decision.

Here, McLean adduces no evidence showing the Hospital's proffered reasons for her termination lacked a factual basis; McLean admits to every instance of discipline for errors at work. (ECF Doc. No. 24-4).  McLean introduces no evidence indicating the proffered reasons (namely her repeated errors) did not motivate Hospital's decision to terminate her employment.

McLean does not adduce evidence challenging the sufficiency of the Hospital's proffered reasons leading to termination. Although she offers no evidence for this assertion, McLean instead claims the Hospital must have discharged her as a pretext because her sleep apnea caused the errors. "Though an employer is prohibited from discharging an employee based on his disability, the employer is not prohibited from discharging an employee for misconduct, even if that misconduct is related to his disability" *Anderson,* 2015 WL 1455210 at *12 (citing *Grosso v. UPMC,* 857 F.Supp.2d 517, 537-39 (W.D.Pa.2012)). McLean adduces no evidence showing the proffered legitimate, non-discriminatory reasons for Hospital's termination are pretext for discriminatory animus.

"[T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Kurten,* 402 F. Supp.2d at 580 (citing *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 331 (3d Cir.1995)). The burden is on the plaintiff to "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence.'" *Id.* (emphasis in original).

Here, McLean fails to show such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons." *Fuentes*, 32 F.3d at 765. McLean does not dispute the occurrence of the proffered disciplinary events, but insists the reason for her termination is pretext for termination motivated by discriminatory animus. (ECF Doc. No. 24-4). She cannot rely on her personal belief. She must adduce facts of recklessness, implausibility, inconsistency, incoherency or contradiction. She has not done so.

**B. McLean fails to adduce evidence to support a failure to accommodate claim.**

    **1. This action and EEOC complaint are reasonably construed to include a failure to accommodate claim even when not separate counts.**

The Hospital argues McLean's failure to accommodate claim is not included as a count in the complaint or in the administrative charge, and as such, has not been raised. Analyzing whether a complaint is within the scope of an earlier administrative charge, or a reasonable investigation arising out of the charge, turns on whether "there is a close nexus between the facts supporting each claim or whether additional charges made in the judicial complaint may fairly be considered explanations of the original charge or growing out of it." *Ivory v. Radio One, Inc.,* No. 01-5708, 2002 WL 501489, *2 (E.D. Pa. Apr. 3, 2002). *See also Ford-Greene v. NHS Inc.,* No. 14-5846, 2015 WL 2395409, *13 (E.D. Pa. May 20, 2015); *Kopko v. Lehigh Valley Health Network,.* No. 14-1290, 2014 WL 5365023, *3 (E.D Pa. Oct. 21, 2014). Both McLean's EEOC complaint and this Complaint include facts supporting a failure to accommodate claim as well as references to a failure to provide accommodations for a disability. McLean's failure to accommodate claim can be fairly read from both the EEOC complaint as well as this Complaint, despite the lack of an express separate count.

    **2. McLean cannot show a failure to respond to a requested accommodation to address her disability.**

McLean claims the Hospital failed to accommodate her disability and failed to participate in the interactive process. "To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of

good faith." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319-20 (3d Cir. 1999). Failure to participate in the interactive process is not an independent claim, but rather part of the analysis of a claim of failure to accommodate. "Participation in the interactive process is simply part of the employer's duty to determine if a reasonable accommodation exists." *Whelan v. Teledyne Metalworking Prod.*, 226 F. App'x 141, 147 (3d Cir. 2007).

To show failure to accommodate "[u]nder either the ADA or the Rehabilitation Act, a plaintiff can state a claim for discrimination based upon her employer's failure to accommodate her handicap by alleging facts showing (1) that the employer is subject to the statute under which the claim is brought, (2) that she is an individual with a disability within the meaning of the statute in question, (3) that, with or without reasonable accommodation, she could perform the essential functions of the job, and (4) that the employer had notice of the plaintiff's disability and failed to provide such accommodation." *Kralik v. Durbin*, 130 F.3d 76, 78 (3d Cir. 1997) (citations omitted). A failure to accommodate claim differs from a disability discrimination claim as "[i]n a failure to accommodate claim… the *McDonnell Douglas* test does not apply. Once a plaintiff alleges facts that, if proven, would show that an employer should have reasonably accommodated an employee's disability and failed to, the employer has discriminated against the employee." *Ferreri v. Mac Motors, Inc.*, 138 F. Supp. 2d 645, 651 n.1 (E.D. Pa. 2001).

### Exhaustion of administrative remedies.

The Hospital claims McLean failed to exhaust her administrative remedies on this claim and it is time-barred. (ECF Doc. No. 19-1 at 15). McLean argues a theory of continuing violation dating from the time of the earliest request through her termination. (ECF Doc. No. 24-1 at 13). McLean points to two requests for accommodation: on February 13, 2013, she

requested an expansion of her holistic Reiki practice, and in September 2013, during her three-day suspension, she requested a transfer to the hematology department. (A. at 31a, 322a (request to expand Reiki practice) and A. at 318a, 319a (request to transfer to hematology)).

McLean is required to file an EEOC complaint within 300 days of the occurrence of the alleged unlawful employment practice. *Zankel v. Temple Univ.*, 245 F. App'x 196, 198 (3d Cir. 2007) (citing 42 U.S.C.A. § 2000e-5). McLean filed the EEOC complaint on February 4, 2014; 300 days prior to the filing date is April 10, 2013. (A. at 343a-348a.) Thus, any event occurring before April 10, 2013 is time-barred. "The continuing violation doctrine has no applicability to '[d]iscrete acts such as termination…'." *Zankel,* 245 F. App'x at 198 (citing *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002)). "[A]n employer's denial of a request for a reasonable accommodation is a discrete act of discrimination that is an independently actionable unlawful employment practice under the ADA." *Mercer v. Se. Pennsylvania Transit Auth.*, 26 F. Supp. 3d 432, 442 (E.D. Pa. 2014), *aff'd sub nom.* 608 F. App'x 60 (3d Cir. 2015) (citing 42 U.S.C. § 12112(b)(5)(A)). The continuing violation doctrine is not applied to failure to accommodate claims, nor can termination be used as a connection to bring otherwise time-barred events within the 300-day period.

McLean's February 13, 2013 request to expand her Reiki practice falls outside the 300-day statute of limitations and is time barred. McLean's September 2013 request for a transfer to hematology falls within the 300-day window. Our analysis then turns upon whether McLean's September 2013 request to transfer to hematology constitutes a request for an accommodation and if the Hospital ignored the request.

***McLean fails to offer evidence her September 2013 request to transfer to hematology
is an accommodation request related to her disability.***

McLean mistakenly asserts the Hospital must offer accommodations as soon as it learns of her disability. (ECF Doc. No. 24-1 at 14).  To the contrary, the burden is on both parties; shifting back and forth as each fulfills their obligations to the other. *Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 311 (3d Cir. 1999).  Making an employer aware of the employee's disability is not sufficient in and of itself; "[defendant] had more than enough information to put it on notice that [plaintiff] might have a disability, and therefore, in order to trigger the interactive process [plaintiff] or her representative only needed to request accommodation." *Id.* at 314. The court in *Taylor* offered significant flexibility to an employee seeking an accommodation, allowing "a family member, friend, health professional, or other representative [to] request a reasonable accommodation on behalf of an individual with a disability." *Taylor,* 184 F.3d at 313 (citing 2 *EEOC Compliance Manual,* Enforcement Guidance for Psychiatric Disabilities, at 20 - 21).  While the standard in *Taylor* is fairly lenient, it nonetheless places the burden to initiate the process upon the employee.   *Taylor* does not place the burden to find reasonable accommodations *solely* upon the employee, rather "both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." *Taylor*, 184 F.3d at 312 (citing *Mengine v. Runyon,* 114 F.3d 415, 419–20 (3d Cir.1997)).  However, "[a] party that fails to communicate, by way of initiation or response, may also be acting in bad faith." *Taylor*, 184 F.3d at 312 (quoting *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)).

McLean and Hospital agree McLean has sleep apnea; where the parties disagree is whether McLean ever requested an accommodation for her sleep apnea to allow her to perform her job. In the abstract, a request for a transfer to a vacant position can constitute an

accommodation request. *Panto*, 2003 WL 1818990 at *4-5 (citing 42 U.S.C. § 12111(9)).  To constitute an accommodation request in a specific case, a request must meet certain standards: "while the notice does not have to be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation,' the notice nonetheless must make clear that the employee wants assistance for his or her disability. In other words, the employer must know of both the disability and the employee's desire for accommodations *for that disability*." *Taylor*, 184 F.3d at 313 (emphasis added).  "[A] statement by an employee that she is disabled or has been diagnosed with a disease or disorder, without more, is insufficient to constitute a request for an accommodation." *Bielich v. Johnson & Johnson, Inc.*, 6 F. Supp. 3d 589, 617 (W.D. Pa. 2014) (citing *Taylor,* 184 F.3d at 313).

McLean "did not need to precisely articulate [her] request as an 'accommodation' as long as [s]he communicated a need for what would amount to an accommodation." *Boice v. Se. Pennsylvania Transit Auth.,* No. 05-4772, 2007 WL 2916188 at *15 (E.D. Pa. Oct. 5, 2007). While instructive, Judge Pratter's *Boice* decision is factually distinct from the present matter.  In *Boice,* the employee closely tied his request to his disability as Mr. Boice "…specified that he needed to be on a certain shift as a result of his diabetes, and he explicitly requested a handicapped parking spot." *Id.* at *15. Although Mr. Boice admitted he never viewed his request as being one of accommodation, the court's decision turned upon his request amounting to an accommodation request.  *Id.* at *14-*15.

In contrast, McLean's request is not tied to her disability.  She admits her request is related to seeking a change of management and a new environment:

> Q.    And why did you think that might be better?  A change of scenery or –
>
> A.    Change of bosses, managers, supervisor and manager.

Q.     And why would that have made a difference?

A.     Because it became very difficult working under their supervision.

Q.     And when you say their—

A.     Vicky and Kathy.

Q.     And was that because you were being counseled?

A.     No.

Q.     Why was it then?

A.     Their work ethics and how they treated people.

Q.     And what do you mean by that?

A.     They more would like to look at the mistakes you made and really get on you for that than trying to nicely come up with a way to work things out and help the person. And I'm not just talking about myself.

(A. 319a.)

Unlike Mr. Boice's request, McLean's request does not have the necessary causal nexus between her request and her disability articulated in *Taylor* to "amount to an accommodation."[5] *Boice* at *15.

Even viewing all evidence in the light most favorable to McLean as the non-moving party, there is nothing in the factual record showing a relationship between McLean's September 2013 transfer request and her sleep apnea.   Rather, she seeks a transfer for a change in supervisor. Nothing in the record indicates McLean connected the request to her sleep apnea

---

[5] *See Whelan v. Teledyne Metalworking Products*, 226 F. App'x 141, 147 (3d Cir. 2007) ("Once an employee notifies his employer of his need for an accommodation for his disability, the employer must communicate with the employee and solicit whatever information is necessary to devise a suitable accommodation"); *Bielich,* 6 F. Supp. 3d at 617 ("Controlling case law requires an employee to provide the employer with both notice of the disability and a request for an accommodation, whereby the employee makes clear that she wants assistance for his or her disability") (citing *Colwell v. Rite Aid Corp.,* 602 F.3d 495, 506 (3d Cir.2010)).

when making the request, and she points to nothing that would tie a transfer to hematology to an ability to perform the essential functions of her job. McLean has therefore not met the requirement of requesting an accommodation for her disability as articulated in *Taylor*.[6]

Absent evidence showing McLean made the Hospital aware of a connection between the September 2013 transfer request and her disability, we cannot find the Hospital failed to participate in the interactive process. Similarly, absent such evidence, McLean fails to meet her burden of proving a *prima facie* case of failure to accommodate; she cannot show the existence of a reasonable accommodation, which would make her able to perform her job. Without some evidence tying the transfer request to McLean's disability, the request relates to her displeasure with her supervisor rather than an accommodation request triggering the Hospital's obligation to engage in the interactive process.

## III.   CONCLUSION

McLean states a *prima facie* case of disability discrimination but adduces no evidence indicating the Hospital's patient safety reasons for termination were pretextual. The Hospital's motion for summary judgment for the disability discrimination claim under the ADA and the PHRA is accordingly granted in the accompanying Order.

McLean's claim the Hospital failed to accommodate her request for expansion of the Reiki job is time barred for failure to exhaust administrative remedies as it occurred more than 300 days before her filing with the EEOC. McLean fails to raise genuine issues of material fact as to whether her September 2013 requested transfer to hematology constituted an accommodation request and offers no evidence connecting this request to her disability. The only

---

[6]   The Hospital also argues McLean's request to transfer to hematology is too late and its grounds for termination already existed when McLean made the request. (ECF Doc. No. 30 at 9). The Hospital cites no authority for the timing but the timing is immaterial given the reason for her transfer request.

evidence is her admission she sought a transfer due to the difficulty of working under her former supervisors. The Hospital's motion for summary judgment dismissing McLean's failure to accommodate claim is also granted in the accompanying Order.